### UNITED FARM BUREAU MUTUAL INSURANCE COMPANY v. BILL PIERCE.

[No. 272A61. Filed June 15, 1972. Rehearing denied August 4, 1972. Transfer denied January 9, 1973.]

*Lee Pettay*, of Bloomington, *McNutt, Hurt & Blue*, of Martinsville, for appellant.

*James H. Kelly*, of Martinsville, for appellee.

ROBERTSON, P.J.—The plaintiff-appellee's (Pierce's) automobile became stuck in the snow. Pierce got out of the automobile and, while another was at the wheel, attempted to free the vehicle. While pushing on a front fender he slipped, cutting the fingers on his left hand.

Pierce had an insurance policy with the defendant-appellant (Farm Bureau) that included medical payment provisions applicable while he was occupying the vehicle. Occupying was defined in the policy as being "in or upon, entering into or alighting from" the automobile. Farm Bureau denied Pierce's claim for medical payments. Pierce prevailed in an action for declaratory judgment by way of a summary judgment. The trial court held:

"1. Plaintiff was insured for medical coverage arising out of the occupying of a vehicle.

"2. At the time of his injury plaintiff was within the occupying clause of the policy set out in plaintiff's Exhibit 'A.'"

Farm Bureau now appeals the overruling of its motion to correct errors which specified the judgment was contrary to the law and the evidence.

The questions presented is whether or not the word "upon" contained in the definition of "occupying" places Pierce within the provisions of the policy. As may be expected there is a division in judicial interpretation of what constitutes "in or upon" as used in the policy clause in the instant case.

Farm Bureau cites us to several authorities from foreign jurisdictions involving interpretation of the same or similar exclusionary clause under the same or similar fact situations. Those authorities hold that the insured was not "in or upon" the vehicle. In a factually similar case, the court said:

"We think that the language employed in stating the coverage is reasonably plain and unambiguous and to say that the insured was 'upon' the truck when he was behind pushing it would be placing a distorted meaning upon the language used. He was neither 'in' nor 'upon' the truck at the time." *Bowlin* v. *State Farm Mutual Automobile Insurance Co.* (1959), 46 Tenn. A. 260, 327 S. W. 2d 66, at p. 67.

Also, where the insured slipped in some mud while holding onto an automobile for support, a Texas Court said:

"We cannot say that she was 'in or upon' the car simply because she put her hand upon it to steady herself. . . . Moreover, we reject the plaintiff's contention that physical contact alone is the test as to whether an insured is 'in or upon, an automobile." *Ferguson* v. *Aetna Casualty & Surety Company* (Tex. 1963), 369 S. W. 2d 844, at p. 846.

Pierce relies upon the principle that if a contract of insurance is ambiguous then it shall be construed in favor of the insured. *Patton* v. *Safeco Insurance Company of America* (1971), 148 Ind. App. 548, 267 N. E. 2d 859; *United State Fidelity and Guaranty Co.* v. *Baugh* (1970), 146 Ind. App. 583, 257 N. E. 2d 699; and *Town & Country Mut. Ins. Co.* v. *Owens* (1968), 143 Ind. App. 522, 241 N. E. 2d 368.

In resolving the issue it is necessary to determine if the phrase in question is ambiguous.

"It is elementary in the construction of insurance policies that where insurance contracts are so drawn as to be ambiguous *or* require interpretation *or* are fairly susceptible of two different constructions so that reasonably intelligent men on reading them would honestly differ as to their meaning, the Courts will adopt that construction most favorable to the insured." (Our emphasis.) *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, at p. 481, 164 N. E. 628, at p. 631.

"Accordingly, the test to be applied in ascertaining the ambiguity, or lack thereof, of the insurance contract before this court, is whether or not it is susceptible of more than one interpretation. Furthermore, in order to constitute ambiguity so as to be susceptible of more than one interpretation, it must be shown that reasonably intelligent men on reading the insurance contract would honestly differ as to its meaning. *Masonic, supra.* This however, does not mean that because controversy exists and a party asserts one interpretation, while the other denies it, that ambiguity has affirmatively been shown to exist." (Citing authorities.) *O'Meara* v. *American States Insurance Co.* (1971), 148 Ind. App. 563, 268 N. E. 2d 109, at p. 111.

In determining whether ambiguity exists we find the observations in *Wolf* v. *American Cas. Co. of Reading, Pa.* (1954), 2 Ill. App. 2d 124, 118 N. E. 2d 777, most helpful:

"As related to the instant case, it is the use of the word 'upon' which creates an ambiguity. It cannot mean that the insured, to be within the meaning of the clause, had to be couched on the roof of the car or on the running board or sitting on the hood. It must connote some physical relationship between himself and the car that enlarged the area defined by the words 'entering or alighting' and the word 'in.' In the two cases which decided against liability, the plaintiff had no physical contact with his own car." (Citing authorities.) 118 N. E. 2d 777, at p. 780.

The court was referring to a denial of liability in *Ross* v. *Protective Indemnity Co.* (1948), 135 Conn. 150, 62 A. 2d 340, (insured struck while responding to a call of nature), and *New Amsterdam Casualty Co.* v. *Fromer* (1950 D. C. Mun. App.) 75 A. 2d 645, (insured struck while returning to his car after talking to another driver). The court continued showing liability existed when the insured was injured when fending off his moving car (*Sherman* v. *New York Casualty Co.* [1951], 78 R. I. 393, 82 A. 2d 839); tying on a front bumper that had fallen (*Lokos* v. *New Amsterdam Casualty Co.* [1949], 197 Misc. 40, 93 N. Y. S. 2d 825); replacing a spare tire in the trunk (*Madden* v. *Farm Bureau Mutual Automobile Ins. Co.* [1948], 82 Ohio App. 111, 79 N. E. 2d 586); and when clinging to a moving car (*Young* v. *State Auto Ins. Ass'n.* [1954], 72 Pa. Dist. & Co. R. 394). In each of the aforementioned instances, the insured had physical contact with his vehicle.

It would further appear that the "entering or alighting" cases require an intent coupled with an overt act necessary to enter or exit the vehicle. Physical support may or may not be a factor to be considered. See *Goodwin* v. *Lumberman's Mut. Cas. Co.* (1952), 199 Md. 121, 85 A. 2d 759, and *Wolf* v. *American Cas. Co. of Reading, Pa., supra.* The majority of "in or upon" cases appear to rely primarily upon physical support.

We are of the opinion that Pierce was "upon" his car at ▮ the time of the accident and thereby covered by the policy of insurance.

Judgment affirmed.

Lybrook, J., concurs; Lowdermilk, J., dissents with opinion.

## DISSENTING OPINION

LOWDERMILK, J.—I find it necessary to dissent from the majority opinion of my colleagues.

Plaintiff-appellee had a policy with the defendant-appellant insurance company (Farm Bureau), which included medical payment provisions applicable while he was occupying the vehicle. As said in the majority opinion, "occupying" was defined in the policy as being "in or upon, entering into or alighting from" the automobile. The claim of plaintiff-appellee for medical payments was denied. However, he prevailed in an action for declaratory judgment by way of summary judgment.

Again, reiterating the statement of the majority opinion, the question presented is whether the word "upon" contained in the definition of "occupying" places plaintiff-appellee within the provisions of the policy.

The court, in awarding summary judgment judgment, held that the plaintiff was insured for medical coverage arising out of the occupancy of a vehicle and, too, at the time of his injury plaintiff was within the occupying clause of his policy as set out in plaintiff's Exhibit "A."

The majority opinion relies upon cases from Tennessee, Texas, Pennsylvania, Connecticut, Washington, D. C. Mun. App., Illinois, New York Supreme, and Ohio.

It is elementary in Indiana that a contract of insurance which is ambiguous shall be construed in favor of the insured and is so well settled it actually needs no citation of authority. However, I agree with the Indiana authorities cited in the majority opinion, as I was the author of the opinion in *United States Fidelity and Guaranty Co.* v. *Baugh* (1970), 146 Ind. App. 583, 257 N. E. 2d 699.

Two Indiana cases relied upon for the affirming of the trial

court in the majority opinion are *Masonic Accident Insurance Company* v. *Jackson* (1929), 200 Ind. 472, at p. 481, 164 N. E. 628, at p. 631, and also the case of *O'Meara* v. *American States Insurance Co.* (1971), 148 Ind. App. 563, 268 N. E. 2d 109, at p. 111.

In the *Masonic* case, *supra,* the clause in said policy pertaining to indemnity thereunder was that there would be no indemnity payable for any death or disability that may have been caused or contributed to, wholly or in part, by any of the following causes: ". . . while engaged in aviation or ballooning, . . ."

This case cited the case of *Benefit Assn. Ry. Employees* v. *Hayden* (1927), 175 Ark. 565, 299 S. W. 995, which case held that one killed while a passenger in an aeroplane was not engaged in aeronautics. The trial court, in that case, declined to make a finding that the decedent, Paul Trotter, who was a telegraph operator, received his fatal injury while riding in an aeroplane as a passenger; that riding as a passenger in an aeroplane does not constitute an exception or excepted risk, under the terms of the policy sued upon.

". . . but the phrase 'engaged in aeronautics' implies that the risk excepted it for the insured to have taken part in the operation of the aeroplane as an occupation or otherwise, and that merely riding as a passenger therein does not come within the exception of the policy. Judgment was rendered against the insurance company for the amount of the policy with penalty and attorney's fee. 'The appellee insists that the phrase "engaged in aeronautics" should be strictly construed, as it constitutes an exemption from the general liability assumed by the company, . . . and that it means active co-operation or taking part in the aeronautical enterprise, resulting in the death of the insured. . . ."

The ambiguity in this case is the distinction between being engaged in aeronautics and riding as a passenger and whether riding as a passenger constitutes being "engaged in aeronautics."

The court said, further:

" '. . . The word "engaged" denotes action. It means to take part in. To illustrate: A servant injured while taking part in the operation of a train means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. . . .' "

The court went on to say that the words "death while engaged in military service in time of war" means death while doing, performing or taking part in some military service in time of war; that in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service.

" '. . . This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word "engaged" it must have been intended that some activity in the service should have caused the death in contradistinction to merely a period of time while the insured was in the service. This view is strengthened when we consider the words following. The words, "or in consequence of such service," relate to the word "death." So that death in "consequence of such service" means death resulting from some act of the insured connected with the service whether such death occurred during the period of his services or afterwards.' "

On this line of reasoning the court, in the *Masonic* case, held that the insured was not "engaged in aeronautics" within the meaning of the clause above quoted.

The court further said:

"The word 'engaged' means to carry on, to conduct, to employ oneself, and does not relate to a single act. To say that one is engaged in a thing is to say that the act is continuous. [Citing cases.]"

At page 481, the court further said:

" '. . . The word "engaged" as used in the application, means "occupied" and does not relate to an occasional act outside of a regular employment.' Thus, it may be observed

that the phrase 'engaged in aviation' denotes and suggests permanency, or continuity, or frequency of action, and does not aptly describe a single isolated act of riding in an aeroplane as a passenger.

"It is elementary in the construction of insurance policies that where insurance contracts are so drawn as to be ambiguous or require interpretation or are fairly susceptible of two different constructions so that reasonably intelligent men on reading them would honestly differ as to their meaning, the courts will adopt that construction most favorable to the insured. [Citing cases.]

"Since the policy in the instant case insured generally by clear and comprehensive language against death from bodily injuries by accidental means, of which there are visible marks or wounds on the body, liability for such a death will not be destroyed by language of exception, unless such exception shall be clear, and free from reasonable doubt. If a policy be ambiguous, the doubt will be resolved against the insurer. [Citing cases.]"

The *Masonic* case further goes to great length to hold that if a reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given.

In *O'Meara* v. *American States Insurance Company, supra,* at page 111, the court, in discussing the test under an ambiguous policy, said:

"Accordingly, the test to be applied in ascertaining the ambiguity, or lack thereof, of the insurance contract before this court, is whether or not it is susceptible of more than one interpretation. Furthermore, in order to constitute ambiguity so as to be susceptible of more than one interpretation, it must be shown that reasonably intelligent men on reading the insurance contract would honestly differ as to its meaning. *Masonic, supra.* This, however, does not mean that because controversy exists and a party asserts one interpretation, while the other denies it, that ambiguity has affirmatively been shown to exist. *American National Bank* v. *Service Life Ins. Co.* (1941), 120 F. 2d 579; certiorari denied 314 U.S. 654, 62 S. Ct. 104, 86 L. Ed. 524."

In the case at bar the plaintiff-appellee was struck in the snow at his sister's house. He had been in the car and got out to push it while another party remained in the car to do the driving. In pushing on the front fender the plaintiff lost his footing and fell to the ground, cutting the fingers of his left hand on the fender.

This being an action for declaratory judgment and handed down on summary judgment, we do not know whether he was pushing with his hands down on the fender nor do we know if he had his back to the car and was lifting up under the fender so he could lift more by lifting with his back.

We do know that he had been in the automobile and had gotten out and was not occupying the car as a passenger or as a driver as was the person who had slid over under the steering wheel to drive when he got out to push on the car.

The plaintiff-appellee, in his brief and in oral argument, made an example of a common house fly which lit on the ceiling as being "on or upon" the ceiling, although the fly was upside down and being in that position, if the automobile were involved, would be upon the automobile. This is a little far fetched, as, in my opinion, it was never intended in the policy to relate the same to flies lighting on the car inside the top, but was for the protection of persons occupying the car as being "in or upon, entering into or alighting from" the insured's automobile by persons.

Defendant-appellant, further, discussed the case of *Green* v. *Farm Bureau Mutual Automobile Ins. Co.* (1954), 139 W. Va. 475, 80 S. E. 2d 843, in which the owner of the automobile had had a flat tire and in changing it himself, the car fell off the jack and the wheel drum fell on his arm. In that case plaintiff-appellee admitted that the policyholder was not "in or upon" the car, but was struck by the wheel drum when the car fell, and liability was denied. The court said:

"... The words of the policy under consideration, whether considered separately or in context, are not ambiguous. They are of plain meaning, easily understood and of common

use. We need not, indeed we are not permitted to, invoke any rule of construction where such plain language is used. No construction is called for. . . ."

Comparing the case at bar with the logic of the plaintiff-appellee with the fly and the man struck by the wheel of his car, while changing a tire, we would say that had the plaintiff-appellee, while pushing on his car, fallen as the car started to move and in some manner fallen under it, and the car stopped on some part of his body, or had there been a defect to the fender which injured his fingers, then he would not have been, in our opinion, "upon" the car, but would have been either under the car or injured by a defect in the fender of his car and, therefore, would have had no cause of action under the policy.

In the Indiana case of *Town & Country Mut. Ins. Co.* v. *Owens, Admr. et al.* (1968), 143 Ind. App. 522, 526, 241 N. E. 2d 368, this court, in interpreting the omnibus clause of an insurance policy, said:

> "It is true, as appellant urges, that insuring agreements are to be construed against the author of the policy. However, this rule does not require this court to abandon all common sense, and blindly afford coverage where it is questionable that any coverage was so intended. The cases in point require that a '*reasonable* construction' be placed on the policy language, and do not require the courts to find coverage unless 'the language fairly admits' liability. *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, 482, 164 N. E. 628. In the matter before us, such an interpretation of the policy language would not be reasonable, and would, in effect, be usurping the apparent intent of the parties. This we cannot do." (Their emphasis.)

I am of the opinion that "entering" or "alighting" need not be discussed here, as plaintiff-appellee was not about to enter the car while pushing the same from the front and he had previously alighted therefrom to get out and push.

I cannot bring myself to the point that I can hold that a man pushing on an automobile stuck in the snow is occupying the automobile as being "in or upon or entering into or alight-

ing from" the automobile. I cannot force myself to the conclusion that the policy in its words is ambiguous and in need of construction and I am of the further opinion we should follow our own precedent set out in *Town & Country Mut. Ins. Co.* v. *Owens, Admr., et al., supra.*

The defendant-appellant wrote the contract, offered it for sale to the insured in Indiana, where it had effect. I agree with the defendant-appellant that it should be construed under the Indiana decisions covering the same.

Under the *Masonic* case, *supra*, the question resolves itself to the following: Do the words of the policy "in or upon, entering into or alighting from" require interpretation? Could reasonably intelligent men honestly differ as to their meaning? Are they fairly susceptible of two different meanings? If the answer to any of these questions is yes, then those words must be interpreted in favor of the insured.

In my opinion, reasonably intelligent men could not honestly differ as to their meaning; they are susceptible of only one meaning.

The plaintiff-appellee was not in the car, he was outside pushing it and had he got it from its stuck position in the snow, then he would have entered into or upon the automobile.

It is my opinion that the words are unambiguous and that the interpretation of "upon" would mean being upon the seat of an automobile and not upon the outside; however, one riding on a truck could be upon the truck when riding on the flatbed or a running board within the meaning of the policy.

Further, in my opinion, the plaintiff-appellee was not entering into the automobile nor was he alighting therefrom. He had been in the automobile and had alighted therefrom without moving the same because it was stuck in the snow. Had the automobile become dislodged and movable in the snow, then it may be reasonably assumed that he would have entered in, upon, or into the driver's seat of the automobile

and have proceeded to go on his journey as he had intended when he first entered the car and found it stuck and was forced to alight therefrom to release the automobile from its being stuck in the snow.

To me, plaintiff-appellee's argument as to the meaning of the words "on" and "upon" where he says that reasonably intelligent men can honestly differ in the understanding of these words is untenable. He further contends that common usage as defined by the dictionary will show different meanings and that, to me, is untenable in the case at bar. There might be some merit in that contention if all people were blessed with the mastery of the English language and did not use "on" and "upon" interchangeably and incorrectly, but since we are not perfect and do understand what one means in the use of these two words, whether one be or not be a master of the English language, does not make them ambiguous and subject to construction by the court.

It is my opinion that plaintiff-appellee Pierce was neither on nor upon his car at the time of the accident and was, therefore, not covered by the policy of insurance. I would, therefrom, reverse the trial court on the summary judgment rendered in this case.

NOTE.—Reported in 283 N. E. 2d 788.