953 F.2d 646
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
AUTO-OWNERS INSURANCE COMPANY, Plaintiff-Appellee,
v.
Sean R. POWELL, Defendant-Appellant.
 No. 91-1603.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 11, 1991.
Decided Jan. 29, 1992.
 
 Before WOOD, Jr., COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff-appellee Auto-Owners Insurance Company brought this declaratory judgment action against Sean R. Powell and his employer, Schaller Trucking Corporation, seeking a determination that Powell was not entitled to underinsured motorist coverage under the insurance policy between Schaller and Auto-Owners. The district court, in a published opinion, granted summary judgment in favor of Auto-Owners. Auto-Owners Ins. Co. v. Powell, 757 F.Supp. 965 (S.D.Ind.1991). Powell appeals.
 
 I. BACKGROUND
 
 2
 Auto-Owners issued an automobile insurance policy to Schaller with effective dates of coverage from September 7, 1987 to March 7, 1988. On October 27, 1987, Powell was driving a Schaller delivery van southbound on I-465 to Indianapolis, Indiana. Powell lost control of the van, the vehicle spun around several times, and it came to rest against the concrete median wall with the rear of the van touching the median wall and the front end the van.
 
 
 3
 Kenneth Tolen, a motorist who witnessed the accident, stopped his van in the right emergency lane and crossed the highway to Powell's vehicle. Powell was still in the van when Tolen reached his vehicle.[1] After Tolen determined that Powell was not injured and the vehicle would not start, he went back to his van to radio for help.
 
 
 4
 Powell testified that he got out of the van at this time. He walked south on the emergency lane away from the van. He then decided to cross over to the opposite side of the highway where Tolen had parked his vehicle. He walked back to the van and looked around it to see if the road was clear.[2] Powell saw oncoming traffic so he turned and walked away from the van. As Powell was walking away from the van, an automobile driven by Gregory Powers collided with Powell's disabled van, thrusting the van into Powell and causing him serious injuries. Powell estimated that two to five minutes had elapsed from the time he got out of the delivery van until the second accident occurred.[3]
 
 
 5
 Powell brought an action against Powers and Auto-Owners in state court. He settled with Powers and his claim against Auto-Owners was submitted to arbitration pursuant to the terms of the insurance policy. An arbitration award was granted contingent on a determination that Powell was an insured under the underinsured motorist provision of the insurance policy.
 
 II. ANALYSIS
 
 6
 We review the district court's entry of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1477 (7th Cir.1990). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 7
 In this diversity action, we must apply the substantive law of Indiana to determine whether Powell qualified as an insured pursuant to the terms of the underinsured motorist provision.[4] Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Indiana insurance law, "plain and unambiguous policy language is given its ordinary meaning." Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co., 915 F.2d 306, 308 (7th Cir.1990) (citation omitted). If the language is ambiguous, "the terms should be construed in favor of coverage." Id. (citations omitted). "Policy language is ambiguous 'if reasonable persons may honestly differ as to [its] meaning.' " Id. (quoting Eli Lilly and Co. v. Home Ins. Co., 482 N.E.2d 467, 470 (Ind.1985)) (other citations omitted).
 
 
 8
 The insurance policy defines an insured, for purposes of underinsured motorist coverage, as "any person while in, upon, entering or alighting from an automobile to which coverage A (bodily injury liability) of this policy applies." It is undisputed that Powell was neither "in" the van nor "entering" the van when the second accident occurred. However, the parties disagree as to whether Powell was "upon" the van or "alighting from" the van when he was injured.
 
 
 9
 A. Powell contends that he was upon the vehicle when he was injured. The term upon, as found in similar underinsured motorist provisions, was initially construed to require physical contact between the insured and the vehicle at the time of the accident. United Farm Bureau Mut. Ins. Co. v. Pierce, 283 N.E.2d 788, 790-91 (Ind.Ct.App.1972) (claimant who slipped and cut fingers while pushing car was upon his automobile for purposes of underinsured motorist coverage). The "physical contact" rule set forth in Pierce was supplemented in Michigan Mut. Ins. Co v. Combs, 446 N.E.2d 1001 (Ind.Ct.App.1983). In Combs the claimant was kneeling on the bumper of the insured vehicle to repair the engine when he was struck by an uninsured vehicle. The claimant was neither the operator nor an occupant of the vehicle. In concluding that coverage existed, the Combs court found that the term upon was ambiguous and should be construed in favor of coverage. Id. at 1007. Accordingly, the court endorsed the use of either the physical contact test or a relationship analysis based on which of the two tests would provide coverage. Id.
 
 
 10
 In defining the relationship approach, the Combs court cited with approval several instances in which coverage was found although the claimant was not in physical contact with the vehicle. For example, recovery was permitted when the claimant was putting chains on a tire, paying a taxicab fare, loading a stereo into the trunk of the vehicle, and exchanging accident information while standing in front of the vehicle. Id. at 1005. In the above situations, each of the claimants "maintained a close and substantial connection with occupancy and use of the insured vehicle." Id.
 
 
 11
 Powell was not upon the van under the physical contact test nor under the relationship approach. There is no evidence that Powell was in physical contact with the van when the second accident occurred. Rather, Powell had been out of the delivery van for several minutes before the second accident occurred. He had walked away from the van, returned to it, and was walking away from it again with the intent to cross the highway. Powell did not intend to reenter the van, to operate it, or to attempt repairs. Powell had abandoned his vehicle when the second accident occurred. Thus, the evidence does not reveal a sufficient relationship between Powell and the van necessary to conclude that Powell was upon the van.
 
 
 12
 Powell maintains that he was alighting from the delivery van when he was injured. In State Farm Mut. Auto. Ins. Co. v. Barton, 509 N.E.2d 244 (Ind.Ct.App.1987), the court denied coverage on facts similar to the instant case. The claimant was a passenger in a car that crashed into a utility pole. The pole fell on top of the car and two electrical wires fell near the passenger side of the car. The passengers got out of the car and made it safely to the roadway. However, the claimant returned to the vehicle to help the driver push it from the ditch. When the car would not move, the claimant headed back toward the roadway and tripped over one of the wires, severely burning his leg.
 
 
 13
 The court rejected the claimant's argument that he was alighting from the vehicle when he was injured. The court found that the claimant had completed the process of alighting from the vehicle when he walked to the safety of the roadway. Id. at 248. Similarly, when Powell got out of the van and walked along the median away from the van, he had reached a place of safety. At that point Powell had completed the process of alighting from the van.
 
 
 14
 In Miller v. Loman, 518 N.E.2d 486 (Ind.Ct.App.1987), the court articulated a four-part test to determine whether a claimant was in the process of alighting from a vehicle. The following factors should be considered: (1) the distance between the accident and the automobile; (2) the time separating the accident and the exit from the automobile; (3) the claimant's opportunity to reach a zone of safety; and (4) the claimant's intentions with relation to the automobile. Id. at 491.
 
 
 15
 In computing the distance between the accident and the van, the court should consider the fact that Powell had walked a significant distance before the second impact. Powell had walked away from the van and returned to the van. When the accident occurred, Powell was walking away from the van for the second time. Thus, there was sufficient distance between Powell and the van to establish that he had alighted from the van.
 
 
 16
 Powell testified that two to five minutes had passed from the time he got out of the van until the second accident. The amount of time that passed may also be measured by the parties' actions. Tolen had ample time to cross the highway and radio for help before the second accident occurred. Powell had enough time to walk away from the van, return to the van, check to see if traffic was approaching, and walk away from the van again. Thus, sufficient time had passed to establish that Powell had completed the process of alighting from the van before he was injured.
 
 
 17
 Powell had an opportunity to reach a zone of safety. In fact, he had reached a zone of safety when he left the van and headed south on the emergency lane. Moreover, Powell could have crossed the interstate with Tolen when he left the disabled van to report the initial accident.
 
 
 18
 At the time of the second accident, Powell had already gotten out of the van, walked away from it, returned to it, and was walking away from it again with the intent to cross the highway. Thus, Powell's activities demonstrate that "he ha[d] embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the [van]." Miller, 518 N.E.2d at 492 (citation omitted).
 
 III. CONCLUSION
 
 19
 For the reasons stated above, there are no genuine issues of material fact and Auto-Owners is entitled to a judgment as a matter of law that Powell does not qualify as an insured pursuant to the terms of the underinsured motorist provision of the insurance policy between Schaller and Auto-Owners. The decision of the district court is therefore
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Tolen testified that Powell was outside of the van when Tolen reached Powell's vehicle
 
 
 [2]
 Powell estimated that thirty seconds passed from the time he walked away from the van and returned to it
 
 
 [3]
 Tolen estimated that five to ten minutes had elapsed from the time the van first came to rest against the median wall and the time the second accident occurred. Tolen further estimated that two to three minutes had elapsed from the time he left Powell outside the van and the time the second accident occurred
 
 
 [4]
 The parties have stipulated that the substantive law of Indiana applies to all issues raised in this case