Patrick John TATA, Plaintiff–Appellant,

v.

Denver D. NICHOLS, Denise Horton, Larry Glidewell and Glidewell's, Inc., Defendants–Appellees.

Supreme Court of Tennessee, at Jackson.

Jan. 11, 1993.

Rehearing Denied March 1, 1993.

Frank Holloman, Jr., Memphis, for plaintiff-appellant.

James B. Summers, Jeffrey L. Jordan, Memphis, for Allstate Ins. Co.; Neely, Green, Fargarson & Brooke, of counsel.

J. Mark Griffee, James S. Strickland, Jr., Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, for Maryland Cas. Co.

## OPINION

REID, Chief Justice.

This case presents an appeal by the plaintiff, Patrick John Tata, from the adjudication that he is not an insured within the meaning of insurance policies issued by the defendants. It is an action for personal injuries resulting from an automobile accident involving three vehicles. The plaintiff claims coverage under the uninsured motorist provisions of the policies covering two of the vehicles. The third vehicle was not insured. The Court of Appeals affirmed the judgment of the trial court granting summary judgment for the defendants. The record does not support the summary judgment.

For purposes of the summary judgment motions, the parties stipulated the facts. A

1982 Nissan, owned by defendant Denise Horton and insured by Allstate Insurance Company, became disabled while travelling northbound on I–240 in Memphis and was parked off the travelled portion of the highway. The plaintiff later rode with the defendant Larry Glidewell in Glidewell's 1986 Jeep Cherokee, insured by Maryland Casualty Company, to the location where the Horton vehicle was stopped. Plaintiff and Glidewell positioned the Glidewell vehicle against the flow of traffic, "nose-to-nose" with the Horton vehicle, on the shoulder of the highway.

The plaintiff and Glidewell examined the Horton vehicle for several minutes trying to determine the mechanical problem that had caused it to become disabled. One of them tried unsuccessfully to start the vehicle. They then raised the hood so that they could try to "jump-start" the Horton vehicle from the Glidewell vehicle. The plaintiff was standing between the two vehicles, leaning under the open hood of the Horton vehicle while attaching one end of a set of battery cables to the battery of the Horton vehicle, and Glidewell was standing to the side and leaning under the hood of the Glidewell vehicle in order to connect the other end of the cables to the battery on Glidewell's vehicle, when the defendant Nichols, the uninsured motorist, collided with the rear of the Horton vehicle. Plaintiff was crushed between the vehicles and seriously injured.

Rule 56.03 of the Tennessee Rules of Civil Procedure provides that summary judgment may be granted where the evidence before the Court "[shows] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, the facts are stipulated; only a question of law is presented.

As required by T.C.A. § 56–7–1201 *et seq.*, the policies on the Horton and Glidewell vehicles provide uninsured motorist coverage for "anyone else *occupying* a covered auto...." (Emphasis added.) The Maryland Casualty Company policy on the Glidewell vehicle defines "occupying" as "in, upon, getting in, on, out or off" the covered vehicle; the Allstate policy on the

Horton vehicle similarly defines the word "occupying" as "in or upon or entering into or alighting from" a covered vehicle. The issue is whether, for purposes of summary judgment, the plaintiff was "upon" either or both vehicles at the time of his injury, and was, therefore, an "insured" within the meaning of the policies.

■ The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146, 149 (Tenn.App.1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *See e.g., Moss v. Golden Rule Life Insurance Co.*, 724 S.W.2d 367, 368 (Tenn.App.1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. *Allstate Insurance Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn.1991).

The trial court and the Court of Appeals sustained both defendants' summary judgment motions, on the grounds that the plaintiff was not "upon" either vehicle at the time of his injury. In affirming the action of the trial court in granting summary judgment in favor of both insurance companies, the Court of Appeals applied its interpretation of similar language in the case of *Bowlin v. State Farm Mutual Automobile Insurance Co.*, 46 Tenn.App. 260, 327 S.W.2d 66 (1959). In *Bowlin,* the plaintiff was driving his pickup truck when it stalled in the snow. When the plaintiff got out and started pushing the truck, he hurt his back. The plaintiff's insurance policy contained a medical payment clause agreeing " 'to pay reasonable expenses ... to ... each person who sustains bodily injury, caused by accident, while in or upon, entering into or alighting from ... the automobile.' " *Id.,* 327 S.W.2d at 67. That court found that these words were not ambiguous and narrowly construed the

clause. It held that though the plaintiff was pushing the truck from the rear of the cab with his shoulder and hands, he "was not 'in or upon' the truck within the language and meaning of the policy." *Id.* at 68. Applying the holding of *Bowlin*, the Court of Appeals held that in the case at bar, the definitions of "occupying" contained in the policies were unambiguous and should be given their plain and ordinary meaning. The court found that because plaintiff was not actually "in," in the process of "getting in, on, out, or off," or "upon" either of the cars, he could not be considered an insured under the policies. For the reasons which are set forth hereafter, the rationale of *Bowlin* is not applicable to the case before the Court.

■ The complete meaning of the term "upon," used in both policies to define "occupying," is uncertain. The many different meanings given the word in the cases which have considered this issue, demonstrate that the word has no precise meaning and is, therefore, sufficiently ambiguous under the circumstances of this case to require construction. As the Illinois court stated when interpreting a similar insurance clause:

> As related to the instant case, it is the use of the word "upon" which creates an ambiguity. It cannot mean that the insured, to be within the meaning of the clause, had to be couched on the roof of the car or on the running board or sitting on the hood. It must connote some physical relationship between himself and the car that enlarged the area defined by the words "entering or alighting" and the word "in."

*Wolf v. American Casualty Co.*, 2 Ill. App.2d 124, 118 N.E.2d 777, 780 (1954).

Having determined that the term "upon" requires construction, the issue now is whether the plaintiff's activity in relation to Glidewell's Jeep and/or Horton's Nissan is encompassed by that term. Several jurisdictions have found that similar circumstances do not come within the statutory definition of "occupying." For example, in Georgia, the court found that the claimant must be physically present in the car at the time of the accident to be covered under the definition. *Holsey v. Allstate Insurance Co.*, 193 Ga.App. 782, 389 S.E.2d 11 (1989), *cert. denied* (1990). In Connecticut and West Virginia, the courts have held that physical contact with the insured car is necessary to be considered "upon" the car. *Testone v. Allstate Insurance Co.*, 165 Conn. 126, 328 A.2d 686 (1973); *Green v. Farm Bureau Mutual Automobile Insurance Co.*, 139 W.Va. 475, 80 S.E.2d 424 (1954). Pennsylvania and Virginia courts have held that even if there was physical contact with the insured car at the time of the accident, a claimant must either previously have been inside the car or have intended to get inside the car, to be considered "upon" the car. *Downing v. Harleysville Insurance Co.*, 412 Pa.Super. 15, 602 A.2d 871 (1992); *Pennsylvania National Mutual Casualty Insurance Co. v. Bristow*, 207 Va. 381, 150 S.E.2d 125 (1966).

Other jurisdictions, however, have not defined "occupying" so narrowly, and the majority of jurisdictions hold that "occupying," as defined in the policies before the Court, includes those who can establish a certain "relationship" with the insured car at the time of the accident. In setting out the criteria to consider in determining whether this relationship exists, courts have looked to factors such as the proximity between the claimant and the insured car in time, distance, and geography, as well as the intent of the claimant. These jurisdictions have struggled to develop an analysis which determines a "rational limit" to the activity that may be said to be encompassed within the term "occupying."

In *Nickerson v. Citizens Mutual Insurance Co.*, 393 Mich. 324, 224 N.W.2d 896 (1975), the plaintiff was a passenger in a car that stalled and was pushed to the side of the road. The plaintiff was injured while standing in front of the car, when it was struck from behind by an uninsured motorist. The stalled car's uninsured motorist clause covered the plaintiff if he was "in or upon or entering into or alighting from" the car. The court rejected the defendant's argument that the plaintiff must be in physical contact with the car to recover. The court concluded that the plaintiff, "due to his immediate prior 'occupying' of

the insured vehicle and his subsequent injury arising out of the use or repair of the same vehicle, was an 'assured' under the policy." *Id.*, 224 N.W.2d at 899. (This case was superseded by statute when Michigan passed no-fault legislation under which damages are provided through "first-party personal protection" coverage or "the assigned claims facility." *Lankford v. Citizens Insurance Co. of America*, 171 Mich.App. 413, 431 N.W.2d 59 (1988).)

In *Moherek v. Tucker*, 69 Wis.2d 41, 230 N.W.2d 148 (1975), the plaintiff had been a passenger in a car that stalled. He accepted the offer of another driver to use his car to push the stalled car. As the plaintiff stood between the two cars holding a tire against the bumpers to avoid scratching, a third car crashed into the cars, pinning the plaintiff between the stalled car and the second car. The driver of the third car was uninsured. The plaintiff claimed coverage under the uninsured motorist provision of the policy issued on the stalled car. "Occupying" was defined in the insurance policy as "in or upon, entering into or alighting from." In *Moherek*, the court held that the plaintiff was upon the car and established a "vehicle orientation test" to determine whether or not an injured party was "occupying" the vehicle as defined by the term "upon." This test was later refined in *Kreuser v. Heritage Mutual Insurance Co.*, 158 Wis.2d 166, 461 N.W.2d 806 (Wis. App.) *cert. denied*, 464 N.W.2d 424 (1990):

> The test considers whether the party was vehicle-oriented or highway-oriented at the time of the injury. The vehicle orientation test considers the nature of the act engaged in at the time of the injury and the intent of the person injured. To these two considerations we add a third: whether the injured person was within the reasonable geographical perimeter of the vehicle.

*Id.*, 461 N.W.2d at 808 (citation omitted). In *Kreuser*, the insurance policy defined "occupying" as "in, on, getting into or out of." *Id.* at 807. That court held that a person hit by a motorcycle while waiting to enter a car which was pulling up to the curb was an "occupant" entitled to uninsured motorist coverage.

The Pennsylvania court first addressed the scope of the term "occupant," in *Tyler v. Insurance Co. of North America*, 311 Pa.Super. 25, 457 A.2d 95 (1983). That case considered whether a person who had alighted from a vehicle remained an occupant. The court concluded:

> He continues to "occupy" the motor vehicle until he severs all connection with it. That point of severance is reached when he becomes highway oriented as opposed to being vehicle oriented.... Until such a person is on his or her own without reference to the [vehicle], the person has not ceased to be a passenger or occupant.

*Id.*, 457 A.2d at 96. The court developed a set of criteria in the subsequent case of *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). In *Utica*, a motorist was involved in an accident and was standing some distance from his car talking to a police officer when he was struck by an uninsured motorist. The policy on his car defined "occupying" to mean "in or upon or entering into or alighting from." The court found that he was an occupant and established the following criteria:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.*, 473 A.2d at 1009.

In *Mondelli v. State Farm Mutual Automobile Insurance Co.*, 102 N.J. 167, 506 A.2d 728 (1986), the plaintiff was struck by an uninsured motorist while leaning against a friend's car. He was covered as a named insured under the uninsured motorist provisions of his father's insurance policy. He also sought coverage from the

insurer of his friend's car. Under the policy, "occupying" was defined as being "in or upon or entering into or alighting from" the car at the time of the accident. The lower court had ruled that the plaintiff did not occupy the car because he was not "on or near the vehicle in connection with his immediate use of it as a means of transportation." *Id.*, 506 A.2d at 730. The court overruled the lower court and rejected any "hard and fast rule." It adopted the approach of leaving "the determination of whether the policy definition of 'occupying' is satisfied to a case-by-case analysis, depending on the facts of the accident and of the use of the vehicle." That court further stated, "We agree with [the] cautionary note that '[m]ere coincidental connection between the accident and some touching of the car would not be enough.' ... [U]nder the facts of this case, ... in which plaintiff's non-coincidental connection with that vehicle is clear" the plaintiff is deemed to occupy the car. *Id.* at 731, quoting *Mondelli v. State Farm Mutual Automobile Insurance Co.*, 193 N.J.Super. 522, 475 A.2d 76 (1984) (Petrella, J.A.D., concurring in part and dissenting in part). *See also Manning v. Summit Home Insurance Co.*, 128 Ariz. 79, 623 P.2d 1235 (Ariz.App.1980), *Cocking v. State Farm Mutual Automobile Insurance Co.*, 6 Cal.App.3d 965, 86 Cal.Rptr. 193 (1970) (plaintiffs found to be "upon" an automobile while standing several feet behind it with tire chains); *Mackie v. Unigard Insurance Co.*, 90 Or.App. 500, 752 P.2d 1266 (1988) (plaintiff was an occupant of a car while removing a package from the trunk); *Martinez v. Great American Insurance Co.*, 499 So.2d 364 (La. App.1986) *rev'd in part on other grounds*, 503 So.2d 1005 (1987) (wrecker operator was "occupying" both vehicles when he was injured while standing between his wrecker and a disabled truck which he had connected to the wrecker); *Pope v. Stolts*, 712 S.W.2d 434 (Mo.App.1986) (plaintiff was "upon" his neighbor's car when he was leaning over the opened hood of the car with jumper cables in his hands, although they had not yet been connected to the battery of the vehicle); *Michigan Mutual Insurance Co. v. Combs*, 446 N.E.2d 1001 (Ind.App.1983) (plaintiff was "upon" a car when he was stooped at the rear of the car with his knees resting on the bumper at the time of the collision); *Sayers v. Safeco Insurance Co.*, 192 Mont. 336, 628 P.2d 659 (1981) (plaintiff was "occupying" a vehicle, although at the time of the collision, he was 10 feet away attempting to jump-start another disabled vehicle); *Pagan v. Motor Vehicle Accident Indemnification Corp.*, 51 Misc.2d 664, 273 N.Y.S.2d 740 (1966) *rev'd on other grounds*, 28 A.D.2d 1119, 285 N.Y.S.2d 115 (1967) (plaintiff was "occupying" an automobile while standing in front touching battery cables of the vehicle). These cases indicate the relationship contemplated, but they also demonstrate that "upon" has no precise meaning except in the context of particular facts.

The dictionary definition also lacks precise meaning except as related to definite facts. According to *The Oxford English Dictionary*, the definition of "upon" is "[o]f local position outside of, but in contact with or close to, a surface." XIX *The Oxford English Dictionary* 300 (2d ed. 1987). Under this definition, physical contact is not an essential aspect of the relationship designated by "upon." Further, unless "upon" should be considered to have no meaning, it includes some relationship different from "in," "getting in," "getting on," "getting out," and "getting off" within the meaning of the Maryland Casualty policy, and "in," "entering into" and "alighting from" in the Allstate policy.

■ When tested according to these authorities, the facts in this case show that the plaintiff's relationship with each vehicle was within the meaning of "upon." The plaintiff had not severed his relationship with the Glidewell Jeep which was being used to "jump-start" the Horton vehicle. He was in very close geographic and spatial proximity to both vehicles, indeed under the hood of the Horton car, and he was directly engaged in activities involving both vehicles. These factual circumstances constitute the location or position described by "upon," and the plaintiff's relationship with each vehicle is within the policy definition of "occupying." The plaintiff, therefore, is an "insured" under both the Maryland Casualty and Allstate policies.

**654**

This holding is consistent with the purpose of Tennessee's uninsured motorist statute. Tennessee's uninsured motorist law requires the insurer to offer uninsured motorist coverage at least equal to the limit carried by the named insured for general liability coverage. T.C.A. § 56–7–1201(a). The uninsured motorist coverage must extend to persons legally entitled to recover damages from an uninsured motorist, if the damages arise "out of the ownership, maintenance, or use" of the insured car. *Id.* "Our uninsured motorists statute was enacted in response to the growing public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists. Its purpose is to provide, within fixed limits, some recompense to ... persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages." *Shoffner v. State Farm Mutual Automobile Insurance Co.,* 494 S.W.2d 756, 758 (Tenn.1972), *rev'd on other grounds, State Farm Mutual Automobile Insurance Co. v. Cummings,* 519 S.W.2d 773 (Tenn.1975).

Defendants argue that though a narrow definition of "occupying" limits the uninsured motorist coverage to less than that required by the statute, the limitation is valid because of the statutory provision allowing exclusions "which are designed to avoid duplication of insurance." T.C.A. § 56–7–1205. Defendants further contend that the definition of "occupying" is designed to and does prevent duplication of benefits under other coverages, which renders it enforceable. Allowing such an exclusion would clearly defeat the purpose of the statute.

The judgments of the Court of Appeals and the trial court are reversed, and judgment will be entered granting the plaintiff's motion for summary judgment.

The costs are taxed against the defendants equally.

DROWOTA, O'BRIEN, DAUGHTREY, and ANDERSON, JJ., concur.