IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 27, 2014

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v.
JUDY PAULINE SIMMONS ET AL.**

**Appeal from the Circuit Court for Unicoi County**
**No. C7646      Thomas J. Seeley, Jr., Judge**

**No. E2013-01419-COA-R3-CV-FILED-JULY 15, 2014**

This case presents an issue regarding the proper interpretation of a policy of insurance. The insurance company filed a declaratory judgment action against the defendants, seeking a determination from the trial court regarding whether the insurance policy afforded coverage for an accident involving a four-wheeler vehicle owned by one of the defendants. The accident resulted in the death of a minor, Ryan Casey. The child's father intervened in the declaratory judgment action. Following a hearing, the trial court concluded that the policy did not provide coverage. The intervenor has appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Clifton Corker, Johnson City, Tennessee, for the appellant, Charles Casey.

David R. Shults, Erwin, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), filed a declaratory judgment action against Judy Pauline Simmons and her daughter, Lori

Beth Simmons Casey[1], regarding an accident that occurred on April 18, 2010. On that date, Ms. Casey was supervising two minors, her daughter and a neighbor named Ryan Casey, who were playing on Ms. Simmons's property. The two children were riding a four-wheeler owned by Ms. Casey, with Ms. Casey's daughter driving and Ryan riding as a passenger on the back. When Ms. Casey entered the house to retrieve a jacket, unbeknownst to her, Ryan began operating the four-wheeler. He apparently drove the four-wheeler into the road, where he collided with a passing vehicle driven by Roger Tipton. Tragically, Ryan was killed in this accident.

Charles Casey, Ryan's father, filed a lawsuit against Ms. Simmons, Ms. Casey, and Mr. Tipton, seeking monetary damages for Ryan's death. At the time of the accident, Ms. Simmons was insured under a property owner's policy issued by Tennessee Farmers. Tennessee Farmers entered a defense on behalf of Ms. Simmons and Ms. Casey in that action, with a reservation of rights. Tennessee Farmers then initiated the instant declaratory judgment action, asserting that no coverage existed under the property owner's policy regarding the subject accident. Tennessee Farmers sought a declaration as to the rights and legal relationships of the parties pursuant to the policy, specifically, whether the accident and incident lawsuit were covered by the policy. By leave of court, Charles Casey was allowed to intervene in this action.

The trial court conducted a hearing on May 24, 2012. Several witnesses testified, including Ms. Simmons, Ms. Casey, and Mr. Tipton. The trial court announced its ruling from the bench at the conclusion of the hearing, determining that there was no coverage under the respective policy concerning this accident. The court subsequently entered a Declaratory Judgment on August 1, 2012, declaring that the policy issued by Tennessee Farmers to Ms. Simmons provided no coverage with respect to the accident or the subsequent lawsuit and that neither Ms. Simmons nor Ms. Casey was entitled to a defense, legal or otherwise, provided by Tennessee Farmers in the lawsuit. Mr. Casey filed post-trial motions, which were denied by the trial court. Mr. Casey timely appealed.

## II. Issues Presented

Mr. Casey presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred in granting a declaratory judgment in favor of Tennessee Farmers.

---

[1]The record does not disclose any familial relationship between Lori Beth Simmons Casey and Ryan or Charles Casey.

2. Whether the trial court made sufficient findings of fact regarding whether the four-wheeler vehicle was entirely off the insured's real property.

## III. Standard of Review

The standard of review is *de novo* with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

Questions regarding the extent of insurance coverage present issues of law involving the interpretation of policy language. *See Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). Therefore, our standard of review is *de novo* with no presumption of correctness afforded to the legal conclusion reached by the trial court on this issue. *Id.* Regarding the proper interpretation of an insurance policy, our Supreme Court has explained:

> [W]ell-established is the principle that "[i]nsurance policies are, at their core, contracts." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank*, 277 S.W.3d at 386-87). The policy should be construed "as a whole in a reasonable and logical manner," *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998), and the language in dispute should be examined in the context of the entire agreement, *Cocke Cty Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).
>
> In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *VanBebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007). However, a "strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Garrison*, 377 S.W.3d at 663-64.

IV. Interpretation of Policy Language

The insurance policy under review provides in pertinent part:

We will pay compensatory damages up to our limit of liability for this coverage for bodily injury and property damage for which an insured[2] becomes legally liable because of any one occurrence.

We will defend any claim or suit seeking damages against an insured caused by an occurrence. We will not defend any claim or suit seeking damages against an insured not caused by an occurrence or for which coverage is excluded.

The policy expressly states that coverage is excluded for:

2.      Bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading, or unloading:

      a.      of any aircraft;
      b.      of any land motorized vehicle;

. . .

3.      Bodily injury or property damage arising out of:

      a.      the entrustment by any insured to any person,
      b.      the supervision by any insured of any person, . . .

      with regard to the ownership, maintenance, operation, use, loading, or unloading of any aircraft, land motorized vehicle (or any other motorized transportation device), or watercraft which is not covered under <u>SECTION II</u> of this policy.

"Bodily injury" is defined elsewhere in the policy as "physical injury to a person and the

---

[2]It is undisputed that both Ms. Simmons and Ms. Casey were considered "insureds" under this policy.

sickness, disease or death of that person resulting from that injury."[3]

The policy defines a "land motorized vehicle," in pertinent part, as:

3. a motorized transportation device designed solely or in part for recreational activities **while off the insured premises**, including golf carts, snowmobiles, dune buggies, and all-terrain or utility vehicles . . . .

4. a motorcycle, motorized bicycle, tricycle, three-wheeler, four-wheeler, or similar type of equipment owned by an insured **while off the insured premises**. . . .

(Emphasis added).

Based on the policy language, the trial court concluded that there was no coverage for the subject accident. In its memorandum opinion, the trial court found that the policy defined a "land motorized vehicle" as a motorized transportation device designed solely or in part for recreational activities while the vehicle is "off the insured premises." The trial court further stated:

[I]t's reasonably clear to this Court in the way, certainly, the terminology was used in 3 and comparing that with 4 that they're talking about the **vehicle being off the insured premises** and not the insured individual. The impact did occur in the roadway. There's been no proof about how wide the easement was for this roadway and how far the easement extended over off the paved area. But there is no question, based on the testimony of Mr. Tipton, that the **impact occurred on the county road** and that the impact was probably not only Ryan Casey but the vehicle itself, there's **no question that the vehicle itself struck, that is impacted, Mr. Tipton's vehicle**. So the Court does find that coverage was excluded because this four-wheeler was used and **the impact occurred while off the insured premises**, that is the property of Ms. Simmons.

(Emphasis added).

Mr. Casey posits that the policy's definition of a "land motorized vehicle" is

---

[3]The policy contains provisions equivalent to the above with regard to a "medical covered injury," which has substantially the same definition as "bodily injury."

susceptible to different interpretations and is, therefore, ambiguous. Mr. Casey asserts that, pursuant to the trial court's interpretation, the four-wheeler is only a land motorized vehicle if it is completely off the insured premises. Mr. Casey argues that, in this instance, the four-wheeler was partly in the road and partly on the insured premises when the accident occurred. He asserts that the policy definition does not address this factual scenario, thereby creating an ambiguity which should be construed against the insurance company.

As previously stated, an insurance policy should be construed in a reasonable and logical manner, and questionable language should be viewed in context. *See Garrison*, 377 S.W.3d at 664. Although it is true that an insurance policy should be strictly construed in favor of the insured and that "if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls," there is also no question that a "strained construction may not be placed on the language used to find ambiguity where none exists." *See id.* (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). Construing the disputed language in the context of the entire agreement, we find no ambiguity. The definition of "land motorized vehicle" requires that the vehicle be "off the insured premises." The policy language does not state that the vehicle can be partially off the premises or slightly off the premises; rather, the language supports the interpretation that the vehicle must be completely off the insured premises at the time of the incident in order to be considered a "land motorized vehicle." Upon a thorough review of the trial court's memorandum opinion and the policy language, we conclude that the trial court properly interpreted this policy language as requiring the four-wheeler to be off the insured premises in order to be considered a "land motorized vehicle." To hold otherwise would be to place a "strained construction" on the pertinent policy language.

## V. Questions of Fact

Mr. Casey's argument also presents a question of fact. He asserts that the trial court should have found that the four-wheeler was partially in the road and partially on the insured property when the accident occurred. We disagree, as there is simply no proof in the record that Mr. Casey's assertion is true.

The evidence in this action demonstrated that Mr. Tipton, a neighbor of Ms. Simmons, was driving home when the accident occurred. Mr. Tipton testified that, without warning, Ryan and the four-wheeler came "off the yard into the road and we collided." According to Mr. Tipton, he was driving on the right side of the road, and Ryan's body and the four-wheeler impacted the right side of his vehicle. Mr. Tipton repeatedly declared that the accident occurred in the road. There is no other proof in the record regarding how or where the accident occurred.

To support his position that the four-wheeler vehicle was partially on the insured's real property, Mr. Casey cites testimony by Ms. Simmons and Mr. Tipton that the roadway was a narrow two-lane road and testimony by Ms. Simmons that if an individual were driving in the right lane, his or her vehicle would be within four feet of the edge of the road. He also notes that Ms. Casey testified that when the accident occurred, she ran outside and found that the four-wheeler had come to rest in the ditch with Ryan's body lying in the road. Ms. Casey estimated the length of the four-wheeler to be approximately 48 inches. Mr. Casey's position ignores the fact that Mr. Tipton, the only actual witness to the accident, testified unequivocally that the four-wheeler collided with the side of his vehicle **in the road**. As such, the location where the four-wheeler ultimately came to rest following the accident is irrelevant to the issue presented. We conclude, as did the trial court, that the undisputed evidence was that the four-wheeler was in the road when the accident occurred.

Because the four-wheeler was in the road rather than on the insured premises at the time of impact, it fits within the definition of a "land motorized vehicle" pursuant to the clear policy language. Therefore, there is no coverage under this policy of insurance for the respective accident occurring during the use of a "land motorized vehicle," which is an expressly stated exclusion to coverage under this policy. We conclude that the trial court properly interpreted the policy language and did not err in determining that no insurance coverage existed.

## VI. Additional Findings of Fact

Mr. Casey further asserts that the trial court should have made sufficient findings of fact regarding whether the four-wheeler was entirely off the insured property, as this was Tennessee Farmers' burden of proof. A thorough review of the trial court's memorandum opinion, as previously quoted in pertinent part, demonstrates that the trial court did find that the four-wheeler vehicle was in the roadway at the time the accident occurred. We conclude that the trial court made sufficient factual findings regarding the location of the four-wheeler as being off the insured premises at the time of the accident.

## VII. Conclusion

For the reasons stated above, the judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Charles Casey. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE